# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MIGUEL DEL ANGEL IZQUIERDO ALEJANDRO, § § § *Plaintiff,* § § v. § § PROPERTY CARE SOLUTIONS LLC, § MARIA G ARANDA, and OSBELIA Y. § URIBE, § § *Defendants.* § § | Civil Action No. 4:22-cv-00029 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Default Judgment Pursuant to Federal Rule of Civil procedure 55 (Dkt. #10).  Having considered the Motion, the Court finds it should be **GRANTED**.

### BACKGROUND

On January 13, 2022, Plaintiff Miguel Del Angel Izquierdo Alejandro filed suit against Defendants Property Care Solutions LLC ("PCS"), Maria G Aranda ("Aranda"), and Osbelia Y. Uribe ("Uribe") for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 (the "FLSA") (Dkt. #1).  PCS is a limited liability company providing general contractor services.  Aranda and Uribe are managers and/or members of PCS.

Plaintiff specifically alleges he provided worked for PCS as a laborer and carpenter from October 2021 to December 2021.  According to Plaintiff, he worked, on average, seventy hours each week with a twenty-five-dollar hourly rate.

By February 25, 2022, summons was returned executed on all Defendants (Dkts. #5–7).

The Clerk of the Court entered default against Defendants on April 14, 2022 (Dkt. #9).  On June 30, 2022, Plaintiff filed the present motion seeking an entry of default judgment (Dkt. #10).  Defendants have not responded.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment.  FED. R. CIV. P. 55.  Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment.  *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  A "default" occurs when the defendant does not plead or otherwise respond to the complaint.  *Id.*  An "entry of default" is the notation the clerk makes after the default is established by affidavit.  *Id.*  Here, because Defendants have failed to properly answer or otherwise appear to defend against Plaintiff's claims and Plaintiff has obtained an entry of default, the first two requisites for a default judgment have been met.  Thus, the only remaining issue for determination is whether a default judgment is warranted.

Entry of default judgment is within the court's discretion.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).  "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)).  However, though entries of default judgment are generally disfavored in the law, entry of a default judgment is not an abuse of discretion when a defendant fails to answer a complaint.  *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000); *Bonanza Int'l, Inc. v. Corceller*, 480 F.2d 613, 614 (5th Cir. 1973), *cert. denied*, 414 U.S. 1073 (1973).

## ANALYSIS

Courts in the Fifth Circuit utilize a three-part analysis to determine whether default judgment is appropriate: (1) whether the entry of default is procedurally warranted, (2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and (3) what form of relief, if any, a plaintiff should receive. *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citations omitted). The Court applies this framework and finds that default judgment is appropriate.

### I. Default Judgment is Procedurally Warranted

Prevailing law within the Fifth Circuit sets forth factors for courts to weigh when determining whether default judgment is procedurally warranted:

> (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Analysis of these factors establishes that default judgment is procedurally warranted.

#### A. No Issues of Material Fact Are Present

Because Defendants failed to answer Plaintiff's Complaint or otherwise appear, Defendants admit Plaintiff's well-pleaded allegations of fact, except regarding damages. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Therefore, there are no issues of material fact.

#### B. Default Judgment Would Not Be Harsh or Result in Substantial Prejudice

Defendants failed to respond to the claims asserted in this matter. Indeed, Defendants have not appeared, filed a pleading, or communicated with Plaintiff's counsel, and there is no indication

that Defendants intend to do so. Further, Defendants received ample notice of the suit, as the Complaint was filed on January 13, 2022 (Dkt. #1), and all summons were returned executed by February 25, 2022 (Dkts. #5–7). Taking the well-pleaded facts as true, Plaintiff has asserted valid causes of action. Plaintiff properly requested entry of judgment in his favor (Dkt. #9). Thus, a default judgment is not unusually harsh in this case as Defendants have had ample opportunity to respond after receiving notice of this action. *See Cunningham v. Crosby Billing Servs., Co.*, Civ. A. No. 4:18-cv-00043-ALM-CAN, 2018 WL 6424792, at *3 (E.D. Tex. Oct. 14, 2018). Moreover, because Defendants' failure to file responsive pleadings "threatens to bring the adversary process to a halt," Plaintiff has experienced prejudice "in pursuing its rights afforded by law." *Ins. Co. of the West v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Accordingly, the second factor supports a finding that default judgment is procedurally warranted.

### C. Grounds for Default Judgment Are Clearly Established

The record indicates that Plaintiff successfully perfected service of process on Defendants (Dkt. #1). Nevertheless, Defendants failed to respond to the Complaint, the Request for Entry of Default, and the present motion. When a defendant's failure to respond is "plainly willful, as reflected by [a defendant's] failure to respond either to the summons and complaint, the entry of default, or the motion for default," then grounds for default are clearly established. *See Graham*, 2017 WL 2600318, at *2 (alteration original). Thus, the Court finds that the grounds for default against Defendants are clearly established.

### D. Default Is Not Due to Excusable Neglect or Good Faith Mistake

Again, Plaintiff properly served Defendants (Dkt. #1). Defendants failed to respond, let

4

alone offer evidence that its unresponsiveness is due to a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Further, nothing in the record indicates that Plaintiff has contributed to the delay of this action or otherwise given the Court any reason to set aside default judgment.

Plaintiff, accordingly, has met the procedural requirements for default judgment.

### II. Pleadings Demonstrate Sufficient Basis for Default Judgment

After establishing default is procedurally warranted, the Court must determine if there is a sufficient basis for judgment. *Nishimatsu*, 515 F.2d at 1206. Although Defendants are deemed to have admitted the allegations set forth in Plaintiff's Complaint in light of an entry of default, the Court must review the pleadings to determine whether the Complaint presents a sufficient basis for relief. *Lindsey*, 161 F.3d at 893. The Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted)).

Upon review of Plaintiff's complaint and Motion for Default Judgment, the Court finds a sufficient basis for the pleadings because Plaintiff has adequately alleged that he was an employee engaged in commerce or the production of goods for commerce and that PCS was his employer within the meaning of the FLSA. An employee is covered by the FLSA's overtime provisions if he is "employed by an enterprise engaged in commerce or in the production of goods for

5

commerce." 29 U.S.C. § 207(a)(1) (2017).  The FLSA defines an enterprise engaged in commerce as a company that: (1) has two or more employees "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) has gross annual sales of at least $500,000.  29 U.S.C. § 203(s)(1) (2017).

Additionally, the FLSA defines an "employer" broadly to include any person acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. § 203(d). The Fifth Circuit has adopted an "economic reality" test to evaluate whether an employee/employer relationship exists.  *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012).  Under this test, the Court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id* at 355.  Each individual or entity alleged to be an employer must satisfy the four-part test, however, not all elements need be present.  *Id* at 355, 357.

Plaintiff has pleaded facts to establish that he was an employee of an enterprise engaged in commerce or in the production of goods for commerce with an annual gross volume of sales or business done in excess of $500,000 as required by the FLSA.  As an enterprise, PCS had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.  Plaintiff expressly pleaded that Defendants had an annual gross volume of sales made or business done in excess of $500,000 (Dkt. #1 ¶ 9). Furthermore, Plaintiff alleged that Aranda and Uribe controlled and supervised the work performed by him, had the power to establish company pay practices, to modify employment conditions, and to hire and fire PCS employees (Dkt. #1 at ¶¶ 10–11).  Plaintiff pleaded that Aranda and Uribe acted directly or indirectly in the interest of PCS (Dkt. #1 ¶ 10).  Due to Defendants'

6

lack of answer or response, Plaintiff's allegations are held as true.  Consequently, the Court finds a sufficient basis for default judgment in the Plaintiff's pleadings because the Plaintiff adequately pleaded he was an employee, and Defendants were his employers under the requirements of the FLSA.  *See Nishimatsu*, 515 F.2d at 1206.

### III.     Form of Relief

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages."  *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002)).  A hearing or detailed affidavits establishing the facts necessary to award damages are usually required, unless the amount of damages is capable of mathematical calculation by reference to the pleadings and supporting documents.  *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).  Plaintiff requests unpaid wages, overtime pay, liquidated damages, and attorney's fees and costs.  Plaintiff requests $15,612.50 in unpaid wages, along with liquidated damages, fees, and costs (Dkt. #1 at p. 4).

#### A.  Unpaid Wages and Liquidated Damages

Under the FLSA, employers must pay employees at least $7.25 an hour as minimum wage. 29 U.S.C. § 206. Furthermore, employers are required to pay employees one-and-one-half times their regular rate of pay for all time worked in excess of 40 hours in a workweek.  29 U.S.C. § 207. An employer's violation of the FLSA is determined based on the pay and hours worked for each workweek and whether a wage payment meets a minimum requirement is calculated by actual compensation received for each workweek divided by the total number of hours worked in that same period.  29 C.F.R. § 778.104 (20); *Overnight Motor Transp. Co. v. Misell*, 316 U.S. 572, 580 (1942).

Some employees are not eligible for overtime. Section 213 provides that the overtime requirements of §§ 206–207 "shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). An employee qualifies for the exemption if: (1) he is paid a salary of not less than $455 per week; (2) he has management as his primary duty; (3) he regularly supervises two or more employees; and (4) he has "the authority to hire or fire other employees or [be someone] whose suggestions and recommendations as to hiring, firing, advancements, [or] promotion . . . are given particular weight." 29 C.F.R. § 541.100(a). The regulations define "management" to include activities such as interviewing, selecting, training, and disciplining employees; setting pay rates and hours of work; directing and apportioning employees' work; handling employee grievances; planning and controlling the budget and inventory; ensuring safety of employees or the property; and monitoring legal compliance measures. *See* 29 C.F.R. § 541.102. The Court finds Plaintiff's duties do not fall within the overtime exemption throughout his employment with PCS. Plaintiff does not meet the salary test, did not appear to manage any construction sites, did not supervise the staff, and had no authority to hire and fire employees. The overtime exemption does not apply to Plaintiff.

Additionally, the Supreme Court has held that it is the employer's legal obligation to maintain complete pay records and where the employer has failed to do so, deference should be given to the employee's reasonable estimate of hours worked and wages paid. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687–88 (1946).

Here, Plaintiff has provided documentation of hours worked during his employment (Dkt. #10, Exhibit 1). Plaintiff began working for PCS at the beginning of October of 2021, and ceased his employment on December 10, 2021. Plaintiff worked, on average, seventy hours each week. For one week in December, Plaintiff worked nineteen hours each day, accruing 133 total work

hours and 93 overtime hours. Plaintiff earned $25 per hour from October of 2021 through December 10, 2021 (10 weeks).[1]

First, Plaintiff is owed $10,000 for ten, forty-hour work weeks at an hourly rate of $25.[2] Second, Plaintiff is entitled to time-and-a-half for his overtime hours. The Court multiplies Plaintiff's regular rate of $25 per hour by one-and-a-half to determine the half-time rate. The Court then multiplies the half-time rate ($37.50) by the number of overtime hours worked each week for the first nine weeks (30) to find that Plaintiff is owed $1,125.00 overtime per week. As Plaintiff worked 93 overtime hours for his last week of work in December, in addition to the weekly overtime rate for the first nine week, Plaintiff is accordingly entitled to $3,487.50 in overtime wages. In total, Plaintiff is entitled to $13,612.50 in overtime wages. Combined with his regular hourly wages, Plaintiff is entitled to $23,612.50 in unpaid wages. However, the relief requested in a complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975). Therefore, the Court reduces the award of unpaid wages to $15,612.50 as requested.

Liquidated damages are recoverable under the FLSA for an amount equal to the unpaid wages and overtime compensation. 29 U.S.C. § 216(b). Although liquidated damages are not punitive but rather intended to compensate employees because they were denied the use of funds they were legally entitled. 29 C.F.R. § 790.22(a)–(b). A defendant can assert an affirmative defense of good faith; however, if a defendant fails to show a good faith defense, the award of

---

[1] There is a discrepancy in Plaintiff's asserted number of weeks worked as compared to the dates given for the duration of his employment. Assuming Plaintiff began working for PCS on October 1, 2021, he would have worked exactly ten weeks for PCS by the end of his employment on December 10, 2021. However, Plaintiff's time estimates are based on an 11-week timeline, which is not possible. The Court will proceed in its analysis working off of the assumption that Plaintiff worked for PCS for ten weeks.

[2] Plaintiff calculates his regular wages owed as $5,000, based on a five-week timeline. However, there can be no overtime pay without first meeting the baseline forty-hour work week. Taking Plaintiff's assertions as true that he worked overtime each week of his employment, he also necessarily worked ten, forty-hour work weeks.

liquidated damages is mandatory. *McConnell v. Thomson Newspapers, Inc.*, 802 F. Supp. 1484, 1506 (E.D. Tex. 1992) (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3rd Cir. 1991)). Therefore, because Defendants have failed to plead and prove good faith, Plaintiff is entitled to liquidated damages in the amount of his unpaid regular and overtime wages amounting to $15,612.50.

Because Plaintiff's total unpaid overtime wages and liquidated damages are capable of mathematical calculation, the amount of judgment can be reliably computed from the record and without a hearing. *See* FED. R. CIV. P. 55(b)(2) ("*If*, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court *may* conduct such hearings or order such references as it deems necessary and proper[.]") (emphasis added); *see also James*, 6 F.3d at 310 (stating that the court relied on affidavits, documentary evidence, and the judge's personal knowledge of the record).  Based on the record, Plaintiff has shown that he is entitled to $15,612.50 in unpaid wages and $15,612.50 in liquidated damages. Accordingly, Plaintiff should be awarded his compensatory and liquidated damages, and Defendants, jointly and severally, should be ordered to pay the total amount of $31,225.00 in compensatory and liquidated damages to Plaintiff.

### B. Fees and Costs

Attorney's fees and costs are recoverable under the FLSA. 29 U.S.C. § 216(b). Plaintiff's requested lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate that is the market rate in the community for this work. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The computation of a reasonable attorney's fee award is a two-step process. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted).

The Court first calculates the "lodestar" by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

The party seeking reimbursement of attorney's fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. KellStrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. *Id.* There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court then considers whether the circumstances of the particular case warrant an upward or downward lodestar adjustment. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). In making any lodestar adjustment, the Court looks to twelve *Johnson* factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the

>fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717–19).

After considering the twelve *Johnson* factors, the court may adjust the lodestar upward or downward. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). "If the plaintiff obtained limited success, the hours reasonably spent on the case times the reasonable hourly rate may be excessive." *Verginia McC v. Corrigan-Camden Indep. Sch. Dist.*, 909 F. Supp. 1023, 1032 (E.D. Tex. 1995). "'[T]he most critical factor' in determining the reasonableness of [an attorney's fee award] . . . 'is the degree of success obtained.'" *Giles v. GE*, 245 F.3d 474, 491 n.31 (5th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 113 (1992)); *see also Migis*, 135 F.3d at 1047. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Verginia McC*, 909 F. Supp. at 1032 (quoting *Hensley*, 461 U.S. at 436). "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457. The fee-seeker must submit adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill, while the party seeking reduction of the lodestar must show that a reduction is warranted. *Hensley*, 461 U.S. at 433; *La. Power & Light Co.*, 50 F.3d at 329.

Here, Plaintiff asks the Court to award it $4,180.00 in attorney's fees. In support of the request for attorney's fees, Plaintiff provides the affidavit of his counsel, James M. Dore ("Dore")

12

(Dkt. #10, Exhibit 2). Dore has a $400 hourly rate. Dore expended 10.45 hours of work on this case. Defendant does not dispute the reasonableness or accuracy of Plaintiff's counsel's billing records. Accordingly, having reviewed Dore's petition, the Court finds the number of hours expended were reasonably necessary. *See Watkins*, 7 F.3d at 457. The Court also concludes the hourly rates are reasonable.

"[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett*, 285 F.3d at 368. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Id.* However, "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972)). This Court has consistetly found hourly rates of $400 and above to be reasonable. *See, e.g., Halleen v. Belk, Inc.*, No. 4:16-CV-00055-ALM, 2018 WL 6701278 (E.D. Tex. Dec. 20, 2018) (FLSA case); *Vassallo v. Goodman Networks, Inc.*, No. 4:15-CV-97, 2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) (FLSA case); *Grimm v. Moore*, No. 4:14cv329, 2015 WL 4776077 (E.D. Tex. Aug. 11, 2015) (FLSA case). Again, Defendants does not dispute the requested hourly rates. Accordingly, the Court finds the requested hourly rates to be reasonable and appropriate in light of the Dore's experience, the relevant rates for similar attorneys in this community, and the specific facts of this case.

Multiplying the reasonable hourly rate by the number of hours reasonably expended, the lodestar amount is $4,180.00. In analyzing the *Johnson* factors, the Court finds the requested fee is reasonable. The time and labor required for obtaining default judgment was not excessive. There were no novel issues in this case. Counsel appears skilled and otherwise qualified to pursue

this FLSA case. Plaintiff's counsel does not argue working on this case precluded counsel from taking on other employment. Further, there is nothing to indicate whether or not counsel entered into a contingency fee agreement. Plaintiff is being awarded the full amount requested. The remaining factors are either inapplicable or considered in the lodestar analysis. The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins*, 7 F.3d at 457. Analyzing the factors, the Court does not find this is one of those exceptional cases and, therefore, will not adjust the lodestar amount.

Finally, Plaintiff seeks $732.00 in costs. Plaintiff's request represents the fee for filing the Complaint and the process server cost. Defendants have not challenged this request. According to Rule 54(d) of the Federal Rules of Civil Procedure, costs shall be allowed as a matter of course to the prevailing party in a civil action. However, not all expenses incurred by a party can be reimbursed. *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 581 (W.D. Tex. 2010). Pursuant to 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *Id.* The initial filing fee of $402 is a taxable under § 1920. However, "[b]ecause private process server fees are not specifically enumerated in § 1920, which encompasses only fees paid to the United States Marshal for service of process, and because there was nothing exceptional about the parties or the nature of this case, the Court finds the private process server fees are not properly taxable as costs." *Honestech, Inc.*,

14

725 F. Supp. 2d at 585; *see also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (vacating district court's award of costs in FLSA case for costs not specifically enumerated by § 1920, including fees for private process servers, teleconference fees, and postage). Therefore, the Court declines to award the costs associated with the process server.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Default Judgment Pursuant to Federal Rule of Civil procedure 55 (Dkt. #10) is hereby **GRANTED**. Plaintiff is entitled to a default judgment against Defendants in the amount of $15,612.50 in unpaid wages, $15,612.50 in liquidated damages, $4,180.00 in attorney's fees, and $402.00 in costs.

All relief not previously granted is hereby denied.

The Clerk is directed to close this civil action.

**IT IS SO ORDERED.**

**SIGNED this 9th day of August, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE